**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Anthony Dattilo,**

**Plaintiff,**

**-vs-**

**John Majoy, et al.,**

**Defendants.**

**Case No. 1:26cv00483**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending are (1) the Motion of Defendants John Majoy, Trevor Elkins, and Michael Marniella to Dismiss the First Amended Complaint (Doc. No. 3); and (2) Plaintiff Anthony Dattilo's Motion for Leave to File a Second Amended Complaint *Instanter* (Doc. No. 5). Defendants filed a Brief in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint *Instanter* on April 15, 2026. (Doc. No. 5.) Plaintiff failed to file either a Brief in Opposition to Defendants' Motion to Dismiss or a Reply Brief in support of his Motion for Leave to File a Second Amended Complaint *Instanter*.

For the following reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint *Instanter* (Doc. No. 5) is DENIED. Defendants' Motion to Dismiss (Doc. No. 3) is GRANTED IN PART and DENIED IN PART, as set forth herein.

## I. Factual Allegations[1]

[1] In setting forth the facts, the Court relies on (1) the allegations set forth in the First Amended Complaint (Doc. No. 1-2 at PageID#s 40-45); (2) the docket sheets and public filings in the criminal cases referenced in the First Amended Complaint (i.e., *State v. Dattilo*, Garfield Heights Municipal Court Case Nos. CRA-2401553A, CRA2401553B, and CRB2401554, and *State v. Dattilo*, Cuyahoga County Court of Common Pleas Case Nos. CR-24-696377 and CR-24-696315); and (3) the Garfield Heights Municipal Court Criminal Division Search Warrant (hereinafter "Search Warrant") that was issued and executed in this matter (Doc. No. 3-3). The Court may consider the docket sheets and public filings

Defendants are public officials employed by the Village of Newburgh Heights, Ohio. (Doc. No. 1-2 at PageID# 40.) Specifically, Defendant Trevor Elkins ("Elkins") is the Mayor of Newburgh Heights, Defendant John Majoy ("Majoy") is the Newburgh Heights Chief of Police, and Defendant Michael Marniella ("Marniella") is a Lieutenant in the Newburgh Heights Police Department. (*Id.*)

In October 2024, Defendants charged Plaintiff Anthony Dattilo ("Plaintiff" or "Dattilo") with (1) Intimidation in violation of Ohio Rev. Code § 2921.04(B)(1), a felony of the third degree; (2) Possessing Criminal Tools, in violation of Ohio Rev. Code § 2923.24(A), a felony of the fifth degree; and (3) Aggravated Menacing, in violation of Ohio Rev. Code § 2903.21(A), a misdemeanor of the first degree. (*Id*. at PageID# 41.) *See also State v. Dattilo*, Garfield Heights Municipal Court Case Nos. CRA-2401553A, CRA2401553B, and CRB-2401554. Defendant Elkins was the alleged victim of these crimes. (Doc. No. 1-2 at PageID# 41.)

Plaintiff was arrested on October 17, 2024, at which time his cell phone was seized. (Doc. No. 3-3 at PageID# 78; Doc. No. 1-2 at PageID# 43.) Plaintiff alleges that "[a] search warrant authorized the search and seizure of any communications between [him] and Elkins." (Doc. No. 1-2 at PageID# 43.) A copy of the search warrant and supporting affidavit are attached as an Exhibit to Defendants' Motion to Dismiss. (Doc. No. 3-3.) This search warrant was issued by a Garfield

---

in the state court criminal cases noted above because (1) those criminal cases are referred to in the First Amended Complaint and are central to Plaintiff's claims; (2) Defendants attach copies of certain filings in these cases as Exhibits to their Motion to Dismiss; and (3) the docket sheets and filings in those cases are public records. *See Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (finding that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). In addition, the Court may rely on the Search Warrant because Plaintiff expressly references this warrant in the First Amended Complaint; it is central to Plaintiff's Fourth Amendment claim; and Defendants attach a copy of the Search Warrant and supporting Affidavit as an Exhibit to their Motion to Dismiss. (Doc. No. 3-3.) *See Bassett,* 528 F.3d at 430.

Heights Municipal Court Judge on October 17, 2024. (*Id.*) The search warrant provides, in relevant part, as follows:

> WHEREAS there has been filed with me an affidavit, a copy of which is attached hereto, designated as Exhibit A, and incorporated herein as though fully rewritten, wherein the Affiant avers that he believes and has good cause to believe that within the following cellular phone, more particularly described as being:
>
> - An iPhone 11, red in color, with black and orange case
>
> The phone is currently located in the custody of the Newburgh Heights Police Department, 3801 Harvard Avenue, Newburgh Heights, OH 44105, there is now being unlawfully kept, concealed, and possessed the following:
>
> Any and all evidence tending to establish a crime concerning a Possessing Criminal Tools; and Aggravated Menacing. Any and all electronic data tending to establish the identity of persons in control of the cell phone, and/or ownership of the cell phone, and/or use of the cell phone and/or purchase of the cell phone and/or location data; and/or all incoming and outgoing phone records, text messages, social media messages, and
>
> Any and all electronic data including but not limited to contact lists, address lists, telephone directories, screen name and/or buddy lists, call logs, dialing histories and installed applications (apps); and
>
> Any and all stored electronic communication including but not limited to opened and unopened e-mail messages, chat capture, text messages, instant messages (IM), text mailings, digital photographs, digital video recordings, audio recordings, to-do lists, notes, memoranda, stored application data (apps), calendars, diaries, journals, and any textual, pictorial, video, or audio data exchanged by any individuals in electronic form; and
>
> Any and all other evidence tending to establish violation of criminal laws of the State of Ohio, to wit: Possessing Criminal Tools ORC 2923.24. Aggravated Menacing ORC 2903.21.
>
> I am satisfied that there is probable cause to believe that the above described data and media is within the above described cellular telephone and that grounds for issuance of this search warrant exist.
>
> THEREFORE: You are hereby commanded in the name of the State of Ohio, with the necessary and proper assistance, to serve this warrant and search the above-described cellular phone within three (3) days. If the data or any part thereof be found there, you

> are commanded to seize it, leaving a copy of this warrant and a receipt for the property taken, to prepare a written inventory of the property seized, to return this warrant to the undersigned or any Judge of the Garfield Heights Municipal Court, and to bring the property found on such search forthwith before said Judge, or some other judge or magistrate of the county having cognizance thereof.

(Doc. No. 3-3 at PageID#s 75-76.)

Plaintiff appeared in Garfield Heights Municipal Court on October 18, 2024, at which time he waived his preliminary hearing in his Garfield Heights Municipal Court Cases (i.e., *State v. Dattilo*, Garfield Heights Municipal Court Case Nos. CRA-2401553A, CRA2401553B, and CRB-2401554) and was bound over to the Cuyahoga County Grand Jury. (Doc. No. 3-1.) Public records reflect that the case was then captioned *State v. Dattilo*, Cuyahoga County Court of Common Pleas Case No. CR-24-696377-A (hereinafter referred to as "*Dattilo I*"). Plaintiff alleges (and the state court docket reflects) that he was held without bond and remanded to the Cuyahoga County Jail. (Doc. No. 1-2 at PageID# 41.) Plaintiff was released on bond on October 23, 2024. *See Dattilo I* (docket sheet). The state trial court imposed various bond conditions, including court-supervised release, GPS electronic monitoring, and an order that Plaintiff have no contact with the victim. *Id*.

Meanwhile, Plaintiff alleges that "Defendants had [him] charged with Menacing by Stalking, in violation of R.C. 2903.211(A)(1), a felony of the fourth degree." (Doc. No. 1-2 at PageID# 42.) Plaintiff alleges that Elkins was the alleged victim of this crime as well. (*Id*.) The state court docket reflects that, on October 21, 2024, a Cuyahoga County Grand Jury indicted Plaintiff on (1) one count of Menacing by Stalking in violation of Ohio Rev. Code § 2903.211(A)(1), a felony of the fourth degree; and (2) Telecommunications Harassment in violation of Ohio Rev. Code § 2917.21(A)(5), a misdemeanor of the first degree. *See State v. Dattilo*, Cuyahoga County Court of Common Pleas Case No. CR-24-69631 (hereinafter referred to as "*Dattilo II*"). *See also* Doc. No. 1-2 at ¶ 12. As

in *Dattilo I*, the state court in *Dattilo II* released Plaintiff on bond on October 23, 2024 with the same bond conditions, i.e., court-supervised release, GPS electronic monitoring, and an order that Plaintiff have no contact with the victim. *See Dattilo II* (docket sheet). Plaintiff alleges that "[f]ollowing his jail stint, [he] was on house arrest with GPS monitoring for weeks." (Doc. No. 1-2 at PageID# 41.)

On November 12, 2024, the State filed a "Motion to Terminate Charges" in *Dattilo I*. *See Dattilo I* (docket sheet). Therein, the State indicated that "[t]his case is being returned to municipal court because the evidence indicates it is a misdemeanor." (*Id.*) On November 13, 2024, the state trial court issued a Journal Entry granting the State's Motion, dismissing *Dattilo I* without prejudice, and returning the case to the municipal court "because the evidence indicates it is a misdemeanor." *Id.* *See also* Doc. No. 1-2 at PageID# 41-42. On that same date, the state trial court issued a Journal Entry in *Dattilo II* dismissing that case without prejudice "pursuant to prosecutor's request" and terminating GPS monitoring. (Doc. No. 1-2 at PageID# 42). *See also Dattilo II* (docket sheet).

Plaintiff alleges that *Dattilo I* and *Dattilo II* were both terminated in his favor. (Doc. No. 1-2 at PageID#s 41-42.) He further alleges that "Defendants acted with malice in instituting and continuing [his] criminal prosecutions ... because they lacked probable cause to support the felony and misdemeanor charges, all of which were quickly dismissed in [his] favor, but not before he incurred attorneys' fees and other economic and noneconomic damages." (*Id.* at PageID# 42.)

Plaintiff further alleges that, in executing the Search Warrant, "Defendants exceeded the scope of the warrant, seizing the entirety of Dattilo's ten-month text message history with an individual named Suzanne Molnar, without probable cause." (*Id.* at PageID# 43.) Specifically, Plaintiff alleges that "Defendants unlawfully searched and seized approximately 2,000 text messages between Dattilo and Molnar" and then "used them in civil litigation against Molnar, where Dattilo first discovered the

Defendants had the messages." (*Id.*) Plaintiff alleges that he "did not receive the approximately 2,000 text messages during discovery in any criminal case against him" and that his "text messages with Molnar were not a part of any lawful criminal action or investigation." (*Id.*)

**II. Procedural History**

On November 10, 2025, Plaintiff filed a Complaint in the Cuyahoga County Court of Common Pleas against Defendants Majoy, Elkins, and Marniella. (Doc. No. 1-2 at PageID#s 8-12.) Therein, Plaintiff asserted a sole count for malicious prosecution under Ohio common law. (*Id.*) On January 16, 2026, Defendants filed a Motion to Dismiss, arguing that "Plaintiff's Complaint is insufficient to overcome the presumed immunity afforded to Defendants under R.C. 2744.02 and 2744.03 and informer immunity afforded to Mr. Elkins as the victim of the charges previously filed against Plaintiff." (*Id.* at PageID# 27.)

On February 3, 2026, Plaintiff filed an Amended Complaint (hereinafter "First Amended Complaint") against the same three Defendants, in which he reasserted his state law malicious prosecution claim (Count One) and asserted a new claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unreasonable searches and seizures (Count Two). (*Id.* at PageID#s 40-47.)

On February 26, 2026, Defendants removed Plaintiff's First Amended Complaint to this Court on the basis of federal question jurisdiction. (Doc. No. 1.) The next day, Defendants filed a Motion to Dismiss. (Doc. No. 3.) Regarding Count One, Defendants again argue that Plaintiff's state law malicious prosecution claim should be dismissed because (1) they are entitled to political subdivision immunity under Ohio Rev. Code §§ 2744.02 and 2744.03 and (2) Defendant Elkins is also entitled to informer immunity as the victim of the crimes charged. (*Id.*) Regarding Count Two, Defendants

assert (among other things) that they are entitled to qualified immunity because (1) Plaintiff has failed to sufficiently allege a violation of his Fourth Amendment rights in the execution of the Search Warrant; and (2) even if he had, "dismissal is required because Plaintiff does not plead facts showing the violation of a clearly established law." (*Id*. at PageID#s 64-68.)

Plaintiff did not file a Brief in Opposition to Defendants' Motion to Dismiss. Rather, on April 1, 2026, Plaintiff filed a Motion for Leave to File a Second Amended Complaint *Instanter* (hereinafter "Motion for Leave"). (Doc. No. 5.) Therein, Plaintiff seeks leave to amend to reassert Counts One and Two, and add the following five additional causes of action: (1) malicious prosecution under 42 U.S.C. § 1983 against all Defendants (Count Three); (2) false light invasion of privacy against Defendant Elkins (Count Four); (3) defamation against Elkins (Count Five); (4) civil action for damages for criminal act against Elkins (Count Six); and (5) intentional infliction of emotional distress against Elkins (Count Seven). (*Id*.) Plaintiff argues that "Defendants will not be prejudiced if the Court grants [him] leave to amend because this case is in the early stages of litigation, and discovery has yet to commence." (*Id*. at PageID# 86.) Plaintiff further asserts (summarily) that "[t]he Second Amended Complaint would not be futile and allowing [him] to file the Second Amended Complaint would serve justice and promote judicial efficiency as it would allow [him] to present all potential claims in one action." (*Id*.) Plaintiff attaches a copy of his Proposed Second Amended Complaint as an Exhibit to his Motion. (Doc. No. 5-1.)

Defendants filed a Brief in Opposition to Plaintiff's Motion for Leave on April 15, 2026. (Doc. No. 6.) Defendants argue that they would be prejudiced by amendment because "Plaintiff's piecemeal disclosure of claims is evidence of dilatory motive and bad faith." (*Id*. at PageID#s 117-119.) Defendants further assert that amendment should be denied on the basis of futility because each

of the seven claims in Plaintiff's proposed Second Amended Complaint fail as a matter of law. (*Id.* at PageID#s 119-126.) Plaintiff failed to file a Reply Brief in support of his Motion for Leave.

## III. Standards of Review

### A. Fed. R. Civ. P. 15(a)(2)

A party may amend its pleading once as a matter of course within twenty-one days after serving it or within twenty-one days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id. See also Morse v. McWhorte*r, 290 F.3d 795, 799-800 (6th Cir. 2002) ("Generally, leave to amend is 'freely given when justice so requires.'") (quoting *Keweenaw Bay Indian Cmty. v. State of Michigan,* 11 F.3d 1341, 1348 (6th Cir. 1993)).

"Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co*., 830 F.2d 68, 69 (6th Cir. 1987). However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 Fed. Appx 438, 443 (6th Cir. 2014). *See also Beydoun v. Sessions,* 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer,* 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford*

*Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000)). In other words, when a defendant opposes a plaintiff's motion to amend under Rule 15 as futile, the court looks to the "substance of the proposed amendment" to determine if the proposed amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See Beydoun*, 871 F.3d at 469 (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc*., 288 F.3d 895, 906 (6th Cir. 2002)).

**B. Fed. R. Civ. P. 12(b)(6)**

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is

a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV. Analysis

### A. Motion for Leave to File Second Amended Complaint *Instanter*

As noted above, in his Proposed Second Amended Complaint, Plaintiff reasserts Counts One and Two from the First Amended Complaint and adds new claims for malicious prosecution under § 1983 as against all Defendants as well as state law claims for false light invasion of privacy, defamation, civil action for damages for criminal acts, and intentional infliction of emotional distress against Defendant Elkins. (Doc. No. 5-1.) In his Motion for Leave, Plaintiff argues that Defendants would not be prejudiced by granting leave to amend because no scheduling order has been issued and discovery "has yet to commence." (Doc. No. 5 at PageID# 86.) Plaintiff further asserts (summarily and without any discussion, analysis, or citation to authority) that "[t]he Second Amended Complaint would not be futile." (*Id.*)

A review of Plaintiff's proposed Second Amended Complaint reveals the following.[2] In his new proposed claim for malicious prosecution under § 1983 (Count Three), Plaintiff alleges that he is "an outspoken critic of the Defendants, and of Elkins's conduct as mayor particularly, and is one of only a few residents of Newburgh Heights who actively speak out against the abuses and misuses of government authority perpetrated by the Defendants." (*Id.* at PageID# 92.) Plaintiff alleges that "Elkins, using his position and authority as mayor, directed the other Defendants (i.e., his subordinates) to bring meritless criminal charges against Dattilo — not for a legitimate purpose, but to silence and punish a political critic." (*Id.*) Plaintiff alleges that "Defendants' maliciousness is best exemplified in the several defamatory and damaging websites disparaging Dattilo – which Elkins admitted to creating – as further evidence of a concerted scheme to silence and punish criticism of Newburgh Heights." (*Id*. at PageID# 93.) Plaintiff then repeats his allegations regarding the charges filed against him in Garfield Heights Municipal Court Case Nos. CRA-2401553A, CRA2401553B, and CRB-2401554, *Dattilo I*, and *Dattilo II*; and alleges that "Defendants deliberately and intentionally overcharged [him] with baseless felonies that were later dismissed in his favor." (*Id*. at PageID#s 93-95.)

In his new proposed state law claim for false light invasion of privacy against Defendant Elkins (Count Four), Plaintiff alleges that "Elkins admitted that he created several websites disparaging Dattilo and other residents of Newburgh Heights, seemingly to negatively influence public opinion and Dattilo's standing in the community." (*Id.* at PageID#s 95-96.) Plaintiff alleges

[2] As noted above, in his Proposed Second Amended Complaint, Plaintiff first reasserts his claims for malicious prosecution under Ohio common law (Count One) and violation of his Fourth Amendment rights under § 1983 (Count Two). (Doc. No. 5-1 at PageID#s 89-92.) Plaintiff does not include any new factual allegations in support of either of these Counts.

that, on one of these websites (anthonydattilo.com), Elkins "lists dozens of criminal and civil cases involving Dattilo or his businesses ... accompanied by Elkins's own editorialization and fictionalization thereof." (*Id.* at PageID# 98.) Plaintiff alleges that "Elkins published material to this website knowing[ly] or recklessly disregarding the falsity of the information presented, and the grave and unmistakable risk of harm that would and could befall Dattilo by placing him in such a false light." (*Id.* at PageID# 99.) In his new proposed claim for defamation (Count Five), Plaintiff similarly alleges that "by publishing false and defamatory content to 'anthonydattilo.com,' as described in Count Four, Elkins did so with the deliberate and reckless intent to publicly disparage and defame Dattilo, to falsely portray him as unsafe, dangerous, untrustworthy, and to thereby reduce or diminish Dattilo's standing in the community." (*Id.* at PageID# 100.)

In his new proposed claim for civil action for damages for criminal act pursuant to Ohio Rev. Code § 2307.60(A)(1) (Count Six), Plaintiff alleges that Elkins "did intentionally, purposefully, knowingly, willfully, and recklessly engage in a pattern of conduct that constitutes telecommunications harassment of Dattilo [in violation of Ohio Rev. Code §§ 2917.21(B)(1) and (2)] by publishing and publicizing a website designed to disparage and defame Dattilo." (*Id.* at PageID#s 102-103.) And, finally, in his new proposed claim for intentional infliction of emotional distress (Count Seven), Plaintiff alleges that Elkins "intentionally, purposefully, knowingly, willfully, and recklessly inflicted emotional distress upon Dattilo by committing the extreme and outrageous conduct described in Counts Four, Five, and Six of this Complaint." (*Id.* at PageID#s 103-104.)

Defendants oppose Plaintiff's Motion for Leave on several grounds. (Doc. No. 6.) Defendants first argue that leave to amend should be denied on the basis of undue delay, bad faith, and dilatory motive. (*Id.* at PageID#s 114-119.) Defendants maintain that Plaintiff's new claims are

not based on new facts or facts that were unknown to him at the time he originally filed the instant action in November 2025. (*Id.*) Noting that Plaintiff already amended in response to Defendants' first Motion to Dismiss, Defendants assert that "Plaintiff is releasing his claims one by one in an attempt to waste the Defendants' resources and cause undue burden." (*Id.*) Defendants argue that "Plaintiff has been on notice of Defendants' arguments for months" and "has had ample time to formulate responses" but instead has "chosen, again and again, to do anything but issue a response and instead eke[s] out additional claims without even bothering to correct the deficiencies of the claims that came before." (*Id.*) Defendants assert that Plaintiff's "piecemeal disclosure of claims" is evidence of both dilatory motive and bad faith and, therefore, leave to amend should be denied on this basis alone. (*Id.*)

Defendants next argue that, even assuming that Plaintiff had not engaged in undue delay and/or bad faith, leave to amend should be denied on the basis of futility because none of the claims in the Proposed Second Amended Complaint would survive a motion to dismiss. (*Id.* at PageID# 115-116, 119-127.) Defendants then proceed to separately analyze Counts One through Seven of the Proposed Second Amended Complaint, arguing that each Count fails as a matter of law. (*Id.* at PageID#s 119-127.) Specifically, regarding Count One (Ohio common law malicious prosecution), Defendants incorporate the immunity arguments raised in their Motion to Dismiss (Doc. No. 3) and further argue that this claim fails because the state court prosecutions "were neither finally terminated nor were they in favor of the Plaintiff as they were dismissals without prejudice." (*Id.* at PageID# 119-120.) Regarding Count Two (Fourth Amendment claim under § 1983), Defendants incorporate the arguments raised in their Motion to Dismiss, noting that "Count Two fails as it has not been substantively amended." (*Id.* at PageID# 120.)

Regarding new Count Three (malicious prosecution under § 1983), Defendants argue that this claim fails because Plaintiff fails to adequately plead lack of probable cause. (*Id*. at PageID#121.) In this regard, Defendants assert that (1) Plaintiff "effectively conceded" the existence of probable cause when he waived his preliminary hearing in Garfield Heights Municipal Court; and (2) "a [Cuyahoga County] grand jury returned an indictment against Plaintiff on [his] felony charges, which itself is evidence of probable cause." (*Id.*)

Regarding new Count Four (false light invasion of privacy), Defendants argue that this claim fails because "the website publishes truthful public records protected by the First Amendment." (*Id*. at PageID# 122.) Defendants maintain that "the proposed Second Amended Complaint itself makes clear that the website contains public court records, case numbers, and docket entries from courts across Cuyahoga County and beyond." (*Id*.) Defendants assert that Plaintiff does not sufficiently allege falsity, noting that "truth is an absolute defense to false light claims." (*Id*.) To the extent Plaintiff pleads that the website "editorializes" or "fictionalizes" certain facts, Defendants argue that the content of the website is constitutionally protected because "[a] mayor commenting on a constituent's lengthy public record of legal proceedings, using public docket information, is expressing opinion on a matter of legitimate public interest," which is "precisely the sort of speech that the First Amendment was designed to protect." (*Id*. at PageID#s 122-123.)

Regarding new Count Five (defamation), Defendants argue that this claim fails for the same reason that Plaintiff's false light invasion of privacy claim fails; i.e., because Plaintiff has failed to sufficiently plead that the website contains a false statement of fact. (*Id*. at PageID# 123.) Defendants assert that "[t]he website's core content consists of public court records, case numbers, charge descriptions, and disposition entries drawn from official court databases," which are "by definition,

matters of public record and therefore true." (*Id.*) Defendants further argue that "[t]o the extent Plaintiff takes issue with the tone or manner of presentation — the yellow headlines, the editorializing commentary — these are expressions of opinion that, under Ohio law and the First Amendment, are not actionable in defamation." (*Id.*)

Regarding new Count Six (civil action for damages for criminal act), Defendants argue that this claim fails as a matter of law because the criminal offense of telecommunications harassment under Ohio Rev. Code § 2917.21 "is targeted at content designed to abuse, threaten, or harass – not at speech about matters of public concern." (*Id.* at PageID# 124.) Defendants maintain that "[p]ublishing truthful public records, even critically, is constitutionally protected speech, not criminal harassment." (*Id.*) Defendants further assert that "Plaintiff's proposed Second Amended Complaint offers no facts to support the conclusory assertion that Mayor Elkins published the website with purpose to abuse, threat[en] and, or harass as opposed to, say, inform his constituents about an individual who has had repeated conflict with the law." (*Id.*)

Lastly, regarding new Count Seven (intentional infliction of emotional distress), Defendants argue that this claim fails because "[t]here are no factual allegations describing what severe emotional distress Plaintiff actually suffered, how he manifested it, or what specific conduct — beyond the creation of a website displaying public records — rose to the level of extreme and outrageous behavior." (*Id.* at PageID# 125.) Defendants further assert that "the Supreme Court has made clear that speech on matters of public concern relating to a public figure[3] - even speech that is hurtful - is

[3] Defendants argue that "Plaintiff, a vocal critic of Village governance who has repeatedly litigated against the Village and its officials, is at minimum a limited-purpose public figure" and "the content at issue – his public court records – is manifestly a matter of public concern." (*Id.* at PageID#s 125-126.)

constitutionally protected and cannot form the basis of an IED claim." (*Id.*) Thus, for all of the above reasons, Defendants argue that Plaintiff's Motion for Leave should be denied as futile because none of the claims set forth in the Proposed Second Amended Complaint would survive a Rule 12(b)(6) motion to dismiss.

Plaintiff failed to file a Reply Brief in support of his Motion for Leave. Thus, Plaintiff has failed to acknowledge, address, or oppose any of the arguments set forth in Defendants' Brief in Opposition, including Defendants' arguments that leave to amend should be denied as futile with respect to all seven counts in the Proposed Second Amended Complaint. Moreover, Plaintiff failed to file a Brief in Opposition to Defendants' Motion to Dismiss Counts One and Two of the First Amended Complaint (which counts are identical to Counts and Two of the Proposed Second Amended Complaint). In sum, Plaintiff has failed to oppose or otherwise respond, in any fashion, to Defendants' substantive legal arguments regarding the viability of Counts One through Seven of the Proposed Second Amended Complaint.

For the following reasons, Plaintiff's Motion for Leave is denied. The Court finds that, by failing to file a Reply Brief in support of its Motion for Leave or otherwise acknowledge or address Defendant's legal arguments, Plaintiff has waived any potential counterarguments related to futility. *See, e.g., McBride v. Performance Food Group, Inc.*, 2023 WL 1778261 at * 4 (E.D. Mich. Feb. 6, 2023) ("The Court will deny Plaintiff's motion [for leave to amend] since his failure to respond [to defendants' brief in opposition to motion for leave to amend, or to defendants' motion to dismiss] means he has waived any potential arguments related to futility."); *Showman v. Q Corporate Holdings, LLC*, 2024 WL 4336373 at * 5 (N.D. Ohio Sept. 27, 2024) (finding that, by failing to acknowledge or address defendants' argument that plaintiff's proposed amended complaint failed to

set forth sufficient allegations to assert a breach of fiduciary duty claim against one of the defendants, plaintiff "waived any potential counterarguments"). *See also 155 South Park LLC v. Auto-Owners Mutual Ins. Co.,* 2025 WL 3083728 at * 19 (N.D. Ohio Nov. 5, 2025) (finding plaintiff waived opposition to issue where "despite having every opportunity to file a Reply Brief or otherwise respond to this argument, Plaintiff failed to do so."); *Smith v. SEC*, 178 F.4th 312, 322 (6th Cir. 2026) (noting that "a party is not required to anticipate affirmative defenses in its opening brief; *so long as it responds to those defenses in its reply brief, it preserves its arguments on the issue*.") (emphasis added).

In so finding, the Court concludes that it was not sufficient for Plaintiff to summarily assert in his Motion for Leave that "the Second Amended Complaint would not be futile." (Doc. No. 5 at PageID# 86.) Plaintiff does not develop this "argument," apply it to any of the claims in his Proposed Second Amended Complaint, or cite or apply any supporting legal authority. It is well established that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). *See also Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (same). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson*, 125 F.3d at 995.

Here, the Court finds that, by failing to provide any meaningful discussion regarding the issue of futility, Plaintiff has waived any argument in opposition to Defendants' assertion that the claims set forth in Plaintiff's Proposed Second Amended Complaint would not survive a motion to dismiss under Rule 12(b)(6). And this Court will not *sua sponte* identify and develop legal theories on Plaintiff's behalf. For one thing, the Sixth Circuit has made clear that it is not this Court's function

or role to do so. *See, e.g., Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 406 (6th Cir. 1992) (in summary judgment context, noting that "it seems utterly inappropriate for the court to abandon its position of neutrality" and "seek[] out facts, develop[] legal theories, and find[] ways to defeat" an argument to which a party has failed to respond); *Young Bok Song v. Gipson*, 423 Fed. Appx 506, 510 (6th Cir. 2011) ("While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.") *See also, e.g.*, *Cunningham v. Enagic USA, Inc.,* 2016 WL 5415106 at *2 (M.D. Tenn. Sept. 28, 2016) (noting that "this Court is not required to develop legal theories and arguments in Plaintiff's stead in order to defeat the motion to dismiss.") In addition, the Court finds that it would be unfair to Defendants for this Court to *sua sponte* construct legal arguments on Plaintiff's behalf, as doing so would deprive Defendants of any meaningful opportunity to respond.

Plaintiff had every opportunity to respond to Defendants' arguments that leave to amend should be denied on the basis of futility. He failed to do so. Thus, Plaintiff waived any potential counterargument to the futility arguments raised in Defendants' Brief in Opposition to Plaintiff's Motion for Leave. Accordingly, and for all the reasons set forth above, Plaintiff's Motion for Leave to Amend is denied.

**B. Motion to Dismiss**

The Court next addresses Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, beginning with Defendant's request to dismiss Plaintiff's Fourth Amendment claim in Count Two. (Doc. No. 3.)

**1. Count Two — § 1983 Fourth Amendment Claim**

In Count Two of the First Amended Complaint, Plaintiff alleges that Defendants violated his Fourth Amendment rights when they exceeded the scope of the Search Warrant by "seizing the entirety of [his] ten-month text message history with an individual named Suzanne Molnar, without probable cause." (Doc. No. 1-2 at PageID# 43.) Plaintiff alleges that the Search Warrant "authorized the search and seizure of any communications between Dattilo and Elkins" and that seizing his text messages with Molnar "was unauthorized and beyond the warrant's lawful authority." (*Id.*)

Defendants argue that this claim should be dismissed because Plaintiff failed to sufficiently plead a violation of his Fourth Amendment rights. (Doc. No. 3 at PageID#s 64-68.) Noting that "Plaintiff's own allegations establish that the search of his phone was conducted pursuant to a search warrant," Defendants argue that "a search conducted pursuant to a valid warrant is presumptively reasonable under the Fourth Amendment." (*Id.*) (citing *United States v. Leon,* 468 U.S. 897 (1984)). Defendants assert that Plaintiff "pleads no non-conclusory facts demonstrating how the search fell outside the warrant's express authorization." (*Id.*) Citing a copy of the Search Warrant attached to their Motion (Doc. No. 3-3), Defendants argue that "[c]ontrary to Plaintiff's assertion that the warrant was limited to communications between 'Dattilo and Elkins,' the warrant authorized seizure of 'any and all electronic data, all incoming and outgoing phone records and text messages, any and all stored electronic communications, and any and all other evidence tending to establish violation of criminal laws.'" (*Id.*) Defendants maintain that "this language expressly permits seizure of text messages and other stored communications from the phone, not only communications between 'Dattilo and Elkins,' as Plaintiff contends." (*Id.*)

Defendants further assert that, even setting aside the fact that the Search Warrant authorized the seizure of Plaintiff's text messages with Molnar, Count Two fails for the additional reason that

"Plaintiff does not allege what specific warrant limitation was violated, what portion of this search exceeded judicial authorization, how officers could have identified messages outside the warrant before reviewing them, or any facts suggesting the warrant itself lacked probable cause." (*Id.*) Defendants also argue that this claim is inadequately plead because the First Amended Complaint "contains no factual allegations describing who executed the search, what role the police Chief or Lieutenant personally played, how the Mayor participated in the search or seizure, or any specific conduct attributable to each Defendant." (*Id.*)

Defendants then argue that "[e]ven if the Amended Complaint alleged a constitutional violation, dismissal is required because Plaintiff does not plead facts showing the violation of a clearly established law." (*Id.*) Specifically, Defendants maintain that they are entitled to qualified immunity because "the [First] Amended Complaint contains no factual allegations plausibly showing that the warrant was facially invalid, that officers exceeded the scope of the warrant, or that the execution of the warrant was unreasonable." (*Id.*)

Plaintiff failed to file a Brief in Opposition to Defendants' Motion to Dismiss. And, while Defendants also incorporated the above arguments in their Brief in Opposition to Plaintiff's Motion for Leave, Plaintiff again failed to respond by choosing not to file a Reply Brief in support of his Motion for Leave. In sum, then, although Plaintiff has had several opportunities to address Defendants' arguments regarding dismissal of his Fourth Amendment claim, Plaintiff has failed entirely to do so.

It is well established that, if a plaintiff fails to respond or to otherwise oppose a defendant's motion to dismiss, a district court may deem the plaintiff to have waived opposition. *See, e.g., Humphrey v. U.S. Attorney Gen.'s Office*, 279 Fed. Appx 328, 331 (6th Cir. 2008) (finding that a

plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). *See also Kuhlman v. City of Cleveland*, 2023 WL 2652585 at * 11 (N.D. Ohio March 23, 2023) (finding that, by failing to respond to defendant's motion to dismiss, plaintiff "waived any argument in opposition to the City's argument that plaintiff's state law claims are barred"); *Selou v. Integrity Sol. Servs., Inc*., 2016 WL 612756 at *3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims.") Here, despite having every opportunity to respond to Defendants' arguments that Plaintiff's Fourth Amendment claim is subject to dismissal, Plaintiff failed to acknowledge or address any of Defendants' arguments. The Court, therefore, deems Plaintiff to have waived any opposition with respect to Defendants' arguments that Count Two should be dismissed pursuant to Rule 12(b)(6). Accordingly, the Court finds that Count Two of the First Amended Complaint is subject to dismissal on the basis of Plaintiff's failure to oppose Defendants' Motion.

Moreover, even if the Court were to address the merits of Defendants' arguments, the Court would find that Plaintiff has failed to sufficiently plead a violation of his Fourth Amendment rights. To maintain a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cty. Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Here, there is no dispute that Defendants Majoy, Elkins, and Marniella acted under color of state law for purposes of Count Two of the First Amended Complaint. As such, the only remaining question is whether Plaintiff has adequately pled that he was deprived of his Fourth Amendment rights to be free from unreasonable search and seizure.

In analyzing this question, however, courts must bear in mind that "[p]ersons sued in their individual capacities[4] under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun,* 680 F.3d 642, 647 (6th Cir. 2012). *See also Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"). Thus, to state an individual capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002). *See also Bojicic v. DeWine*, 569 F.Supp.3d 669, 679 (N.D. Ohio 2021); *Wolfe v. Ohio Department of Corrections and Rehabilitation,* 2022 WL 1591304 at * 4 (N.D. Ohio May 19, 2022). A plaintiff must also plead how each individual defendant caused the plaintiff's alleged constitutional harm. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (emphasis in original); *Boddie v. City of Lima, Ohio*, 2018 WL 1847934 at *2 (N.D. Ohio April 18, 2018) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

In Count Two, Plaintiff alleges as follows:

> 21. Dattilo has a right under the Fourth Amendment to be free from unreasonable searches and seizures.
>
> 22. Dattilo's cell phone was seized upon his arrest.

---

[4] Here, Defendants assert (and Plaintiff does not dispute) that Count Two is asserted against Majoy, Elkins, and Marniella in their individual capacities. (Doc. No. 3 at PageID# 66-67.) *See also* Doc. No. 1-2 at PageID# 40.

23. A search warrant authorized the search and seizure of any communications between Dattilo and Elkins.

24. Defendants exceeded the scope of the warrant, seizing the entirety of Dattilo's ten-month text message history with an individual named Suzanne Molnar, without probable cause.

25. Such an invasion of privacy was unauthorized and beyond the warrant's lawful authority.

26. Defendants unlawfully searched and seized approximately 2,000 text messages between Dattilo and Molnar.

27. Defendants unlawfully obtained the text messages and used them in civil litigation against Molnar, where Dattilo first discovered the Defendants had the messages.

28. Dattilo did not receive the approximately 2,000 text messages during discovery in any criminal case against him.

29. Dattilo's text messages with Molnar were not a part of any lawful criminal action or investigation.

30. By unlawfully searching and seizing Dattilo's text messages with Molnar, Defendants violated the constitutional rights guaranteed to Dattilo by the Fourth Amendment of the United States Constitution.

31. Defendants' actions were not taken in good-faith and were in violation of clearly established law.

32. Defendants' actions were unnecessary, unreasonable, unlawful, and unjustified.

33. Dattilo has suffered direct and proximate economic and non-economic damages as a result Defendants' actions.

(Doc. No. 1-2 at PageID#s 43-44.) Upon careful review, and in the absence of any opposition, the Court agrees with Defendants that the First Amended Complaint fails to sufficiently allege that Defendants Majoy, Elkins, and/or Marniella were personally involved in the alleged deprivation of Plaintiff's Fourth Amendment rights. Specifically, the Court finds that this claim fails because

Plaintiff fails to plead any facts attributing any specific actions taken by, or at the direction of, Defendants Majoy, Elkins, or Marniella relating to the execution of the Search Warrant at issue. Nor does Plaintiff plead any facts that Defendants Majoy, Elkins, or Marinella otherwise engaged in any specific conduct that resulted in the unlawful seizure of the text messages between Plaintiff and Molnar.

Although not raised by Plaintiff, the Court notes that the First Amended Complaint does contain allegations referring to "Defendants" collectively, such as that "Defendants unlawfully searched and seized approximately 2000 text messages between Dattilo and Molnar" (Doc. No. 1-2 ¶ 26) and "Defendants unlawfully obtained the text messages and used them in civil litigation against Molnar" (*Id*. at ¶ 27). The Court finds, however, that these generalized collective allegations are insufficient to plead Majoy, Elkins, and/or Marniella's personal involvement in the deprivation of Plaintiff's Fourth Amendment rights. Courts have found that a plaintiff's categorical references to a group of defendants are insufficient to allege specific actions on the part of individual defendants for purposes of a § 1983 individual capacity claim. *See, e.g., Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (affirming district court's dismissal of individual capacity claims against two defendants because the complaint made "only categorical references to 'Defendants'"); *Bojicic*, 569 F.Supp.3d at 679 (in § 1983 action, finding that plaintiffs' allegations "lump[ing] the defendants together" did not "cure their failure to link individual defendants with specific actions because the law requires more."); *Wolfe,* 2022 WL 1591304 at * 5 (in § 1983 action, finding that "Plaintiff's

categorical references to the 'various above captioned corrections officers' throughout the Complaint are insufficient to allege specific actions on [the individual Defendants'] behalf.").[5]

The Court also notes (again, although not raised by Plaintiff) that (1) the Search Warrant attached to Defendants' Motion to Dismiss was issued to the "Chief of Police of the Newburgh Heights Police Department [i.e., Defendant Majoy] and/or Detective Michael Marniella" (Doc. No. 3-3 at PageID# 75); and (2) the affidavit supporting the Search Warrant was signed by Defendant Marniella (*Id*. at PageID# 80.) Notably, however, Plaintiff does not allege that the Search Warrant itself was invalid or that it was not supported by probable cause. Rather, Plaintiff alleges only that "Defendants" exceeded the scope of the warrant by unlawfully seizing the text messages between himself and Molnar. Thus, the mere fact that the Search Warrant was issued to Defendants Majoy and/or Marniella, or that Defendant Marniella swore to the truthfulness of the averments set forth in the affidavit that resulted in the issuance of the Search Warrant, is not sufficient to plead that either Majoy or Marniella personally engaged in conduct that exceeded the scope of the Search Warrant in violation of Plaintiff's Fourth Amendment rights as set forth in Count Two of the First Amended Complaint.

---

[5] To the extent the First Amended Complaint implies that one or more of the Defendants are individually liable under a *respondeat superior* theory of liability, the Court rejects this argument. The Sixth Circuit has made clear that "Section 1983 liability ... cannot be premised solely on a theory of *respondeat superior*, or the right to control employees." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). *See also Hays v. Jefferson Cnty*., 668 F.2d 869, 872 (6th Cir. 1982). Rather, supervisory officials may only be held liable in their individual capacities if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Heyerman,* 680 F.3d at 647 (quoting Hays, 668 F.2d at 874.) "At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays,* 668 F.2d at 874. Here, Plaintiff does not plausibly allege any facts about the specific conduct of Majoy, Elkins, and/or Marniella suggesting that they implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct at issue in Count Two. *Heyerman*, 680 F.3d at 648. Rather, at best, Count Two could be interpreted as alleging generally that "Defendants" participated in the alleged Fourth Amendment violation set forth in Count Two. The Court finds this to be insufficient for all the reasons set forth above.

Accordingly, in light of the lack of opposition and for all the reasons set forth above, the Court grants Defendants' Motion to Dismiss Count Two of the First Amended Complaint.[6]

**B. Count One – Ohio Common Law Malicious Prosecution**

Plaintiff's sole remaining claim is his state law claim for malicious prosecution in Count One. (Doc. No. 1-2 at PageID#s 41-43.) Having dismissed Plaintiff's federal claim against Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for malicious prosecution.

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims." *Smith v. Erie Cty. Sheriff's Dep't*, 603 Fed. Appx 414, 424 (6th Cir. 2015). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp*., 89 F.3d 1244, 1254-55 (6th Cir. 1996); *accord Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th

[6] Although Plaintiff purports to sue Defendants in both their individual and official capacities (*see* Doc. No. 1-2 at PageID# 40), Plaintiff does not argue that Count Two of the First Amended Complaint asserts any *Monell* claims against the Village of Newburgh Heights. Upon its own review, the Court does not construe Count Two as asserting any such claims.

Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

Here, the Court uses its "broad discretion" in deciding not to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. *Smith*, 603 Fed. Appx at 424. The Court concludes that issues of comity support the Court's decision to decline jurisdiction over Plaintiff's state law claim. As other courts have recognized, "[t]he interest in avoiding needless decisions on state-law issues as a matter of comity weighs heavily against supplemental jurisdiction." *Howell v. Buckeye Ranch, Inc.*, 2013 WL 1282518 at *8 (S.D. Ohio Mar. 27, 2013); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (noting "the Supreme Court's general comity-related principle that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law"); *White v. City of Cleveland, et al.*, 2020 WL 7640932 at *24 (N.D. Ohio Dec. 23, 2020); *Barrio Bros., LLC v. Revolucion, LLC*, 2021 WL 2895509 at *18 (N.D. Ohio July 9, 2021).

Considerations regarding judicial economy, convenience and fairness do not outweigh these concerns. Indeed, there is no indication that remanding the instant case to state court would cause any additional inconvenience to the parties. As far as the Court is aware, litigating in state court upon remand will be at least as convenient as litigating in this Court. *See Fox v. Brown Memorial Home, Inc.*, 761 F. Supp. 2d 718, 725 (S.D. Ohio 2011). Moreover, this case has not yet progressed past the pleading stage. No discovery has commenced, no trial date is set, and the matter has only been pending in federal court for a matter of months. *Cf. Barrio Bros.,* 2021 WL 2895509 at *18.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for malicious prosecution. Defendants' Motions to Dismiss Count One is denied without any prejudice to any right Defendants may have to refile their Motion upon remand to state court.

**V. Conclusion**

Accordingly, and for all the reasons set forth above, Plaintiff's Motion for Leave to File a Second Amended Complaint *Instanter* (Doc. No. 5) is DENIED. Defendants' Motion to Dismiss (Doc. No. 3) is GRANTED IN PART and DENIED IN PART as follows. Defendants' Motion is granted as to Count Two of the First Amended Complaint and denied without prejudice as to Count One of the First Amended Complaint. The remainder of the case is REMANDED to the Court of Common Pleas of Cuyahoga County, from which it was removed.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: September 21, 2026